**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Erin Little, | : | Civil Action |
| | : | |
| Plaintiff | : | No. |
| | : | |
| vs. | : | |
| | : | |
| Widener University, | : | |
| | : | |
| Defendant | : | |

**CIVIL COMPLAINT**

Plaintiff Erin Little ("Plaintiff"), by her undersigned counsel, files this Civil Complaint and alleges the following:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction to hear this action and adjudicate the claims herein pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12188; the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and 28 U.S.C. §§ 1331 and 1343(a)(4).

2. Venue is appropriate in the Eastern District of Pennsylvania because the events or omissions giving rise to Plaintiff's claims occurred therein and because Defendant is doing business and/or may be served with process therein.

**THE PARTIES**

3. Plaintiff Erin Little ("Ms. Little") is an adult individual who resides in Pottstown, Pennsylvania.

4. Defendant Widener University ("Widener") is a private educational institution with a principal place of business located at One University Place, Chester, Pennsylvania 19013.

5. Widener operates a program or activity receiving federal financial assistance within the meaning of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794(b)(2)(A).

6. Widener also operates a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12188(7)(J).

## FACTUAL BACKGROUND

### Ms. Little's Disabilities

7. In 2006, Ms. Little was diagnosed with Gastroparesis, which is a rare chronic condition that affects the stomach muscles and prevents proper stomach emptying.

8. Gastroparesis is an impairment that substantially limits Ms. Little in her major life activities, including but not limited to eating, sleeping, learning, reading, and concentrating.

9. In or around August 2016, Ms. Little was diagnosed with an autoimmune disease that also substantially limits Ms. Little in her major life activities, including but not limited to walking.

### Ms. Little Enrolls in Widener's School of Nursing

10. In 2011, Ms. Little began applying to and visiting colleges with the goal of earning a nursing degree and becoming a nurse.

11. In 2012, Ms. Little visited Widener and met with Deborah Garrison (Widener's School of Nursing's Dean), Dr. Rose Schwartz (Director, Undergraduate Pre-licensure Program), and Dr. Johanna Isaacs (Widener's Disability Services Coordinator), who collectively assured Ms. Little that Widener and Widener's School of Nursing would accommodate Ms. Little's disability.

12. Ms. Little decided to attend Widener, in large part based upon the representations made to her that Widener would accommodate her disability.

13. In 2013, Ms. Little began attending Widener and, at all relevant times, was an undergraduate student in Widener's School of Nursing.

## Ms. Little's Reasonable Accommodations

14. Throughout Ms. Little's enrollment with Widener, Ms. Little required medical accommodations because her health fluctuates. Ms. Little experiences unpredictable flare-ups that cause her to be hospitalized, receive treatments, including blood transfusions, and undergo surgeries.

15. At all times, Ms. Little complied with Widener's accommodations policy/procedure.

16. At the beginning of each academic year, Ms. Little and her parents sat down with the Director of Disability Services and other Widener representatives to discuss Ms. Little's accommodations for the year and set requirements for Ms. Little's accommodations.

17. Since Ms. Little began attending Widener, Ms. Little has had numerous issues with Widener's accommodation of her disability.

## Ms. Little's Freshman Year

18. During Ms. Little's freshman year at Widener, Ms. Little's accommodations included not being penalized for attendance, having extra time on tests, being permitted to make up tests and assignments, and notetaking for her sciences classes.

19. Widener generally complied with Ms. Little's accommodations during her freshman year; specifically, Ms. Little's non-nursing program professors complied with Ms. Little's accommodations.

20. Widener, however, began to renege on its promises to accommodate Ms. Little.

21. During the Spring 2014 semester, Ms. Little was enrolled in an Intro to Nursing class.

22. During the Spring 2014 semester, Ms. Little was hospitalized in the ICU when a paper was due for the Intro to Nursing class. Ms. Little and her father called her professor from the ICU and informed her professor that she had written the paper but did not have e-mail access in the hospital to submit the paper.

23. The Intro to Nursing professor told Ms. Little that unless she submitted the paper on time, she would receive a zero on the paper, which would have prevented Ms. Little from starting clinicals and remaining in the Nursing Program.

24. Widener finally allowed Ms. Little to submit the paper, which Ms. Little submitted less than twenty-four (24) hours after the deadline, but penalized Ms. Little's grade, which affected her overall GPA.

25. During the Spring 2014 semester, there were presentation days scheduled in the Intro to Nursing class. If a student missed either his/her presentation day or any classmate's presentation day, the student would receive a "0" and failing grade for the class, ultimately resulting in the student's dismissal from the Nursing Program.

26. Although Ms. Little was able to attend her presentation, she was unable to attend every classmate's presentation. The Intro to Nursing professor penalized Ms. Little's presentation grade (by half) because she did not attend every single presentation.

27. A classmate, however, was sick and could not attend two presentation days, but remained in the Nursing Program.

28. Ms. Little successfully completed her freshman year at Widener and was invited to join Widener's Chapter of Sigma Alpha Pi, a National Society of Leadership and Success.

4

**Ms. Little's Sophomore Year**

29. During Ms. Little's sophomore year at Widener, Ms. Little's accommodations included not being penalized for attendance, having extra time on tests, and being permitted to make up tests and assignments.

30. During Ms. Little's sophomore year, Dr. Schwartz would not allow Ms. Little's academic advisor to assist Ms. Little in obtaining appropriate accommodations.

31. In Ms. Little sophomore year, Anna Bachus became Director of Disability Services.

32. At the beginning of Ms. Little's sophomore year, Widener required Ms. Little to have her professors complete disability accommodation forms to document what each professor allowed.

33. At all times, Ms. Little complied with this new requirement, but her professors would not always cooperate. Many professors did not know what the forms were and many would provide broad allowances, but then change these requirements during the semester. Professors also would not respond to Ms. Little's requests to meet to complete the disability forms.

34. During Ms. Little's sophomore year, Ms. Little had two outpatient surgeries and required hospitalization.

35. During Ms. Little's sophomore year, Widener increasingly failed to accommodate Ms. Little's disability.

36. During the Spring 2015 semester, Ms. Little was enrolled in a Microbiology class, taught by Professor Kristen Anderson, which included a lecture and lab component.

37. During the middle of the Spring 2015 semester, Ms. Little was unable to take two tests in the Microbiology class due to health issues.

38. Professor Anderson told Ms. Little that she would have to make up the second test within a week. Up to that point, Widener had never told Ms. Little that she had to make up tests within a week.

39. Ms. Little was unable to take the test within a week because she was in the hospital, but Ms. Little would have been able to make up the test within a reasonable time period.

40. Professor Anderson allowed Ms. Little to make up both Microbiology tests in an alternative format. This was the first time Widener required Ms. Little to take an alternative format test in essay format.

41. The alternative format tests were harder than the original exams Ms. Little's classmates took, which were multiple choice exams.

42. Alternative format tests were also more difficult for Ms. Little because Widener sometimes adjusted Ms. Little's classmates' multiple choice exam grades if a significant number of students missed a question. Ms. Little received no such grade adjustment. Widener also did not give Ms. Little partial credit for her answers on the alternative format tests.

43. During the Spring 2015 semester, Ms. Little began taking nursing-related labs.

44. Professors required that students complete a certain number of hours in the lab per month. Students were assigned a specific lab time one day per week. Open lab times were scheduled throughout the week for students to make up missed lab time or gain extra lab time. Students were also allowed to attend other section's lab times.

45. Two of Ms. Little's professors allowed Ms. Little to make up missed lab times during open lab times or attend a different section's lab time, but one professor refused any attendance flexibility. As a result, Ms. Little's participation portion of her grade was penalized.

6

46. At the end of the Spring 2015 semester, Widener refused to change Ms. Little's lab time for a simulation, which was the final exam, when Ms. Little was in the hospital, even though Ms. Little found a student who agreed to swap times with her.

47. As a result, Ms. Little worked with her doctors in order to leave the hospital early so that she could make it to the simulation in order to complete the lab requirement with her partner.

48. During the Summer 2015 semester, Ms. Little was required to re-take the Microbiology class that Ms. Little was enrolled in during the Spring 2015 semester.

49. During the Summer 2015 semester, Ms. Little was in the hospital for treatment, but this time, was not penalized for missing Microbiology classes.

50. During the Summer 2015 semester, Professor Linda O'Kane, Assistant Dean of Undergraduate Services in the Nursing Department, who was aware of why Widener required Ms. Little to re-take the Microbiology class, asked Ms. Little to tutor four students in the Microbiology class during the Summer 2015 semester. Professor O'Kane also instructed those students to seek out Ms. Little for assistance in the class.

51. Despite Widener's increasing failure to accommodate Ms. Little's disability, Ms. Little successfully completed her sophomore year at Widener with a 3.2 GPA, due in large part to Ms. Little's Microbiology grade.

52. Ms. Little also scored well on her Health Education Systems Incorporated (HESI) exams, which are exams designed to prepare nursing students for professional licensure.

### Ms. Little's Junior Year

53. During Ms. Little's junior year at Widener, Ms. Little's accommodations included not being penalized for attendance, having extra time on tests, and being permitted to make up tests and assignments.

54. Before the Fall 2015 semester, Ms. Little and her mother met with Ms. Bachus, her assistant, and Dr. Rose Schwartz to discuss Ms. Little's accommodations. During this meeting, Dr. Schwartz falsely accused Ms. Little of abusing her accommodations so that she could cheat on make up exams.

55. Widener continued to require Ms. Little to have her professors complete disability accommodation forms to document the accommodations that each professor allowed.

56. Widener began requesting more detail on Ms. Little's disability accommodation forms, including her exact medical condition(s) and associated limitations, because Widener indicated that it doubted the severity of Ms. Little's condition(s).

57. Widener began requiring Ms. Little to take some, but not all, exams across from Dr. Schwartz's office instead of in the Disability Services office where Ms. Little took her other exams.

58. During the Fall 2015 semester, Ms. Little continued to have problems with professors completing the disability accommodation forms. Many professors provided broad allowances, but changed the allowances during the semester. Some professors did not complete the forms until well into the semester. Two professors never completed the forms.

59. During the Fall 2015 semester, Ms. Little took a Maternity class and clinical with Dr. Mary Francis. Ms. Little missed two tests and the final, which she made up. Ms. Little was required to take alternative format exams to make up these tests.

60. Ms. Little's classmates received curved grades on their Maternity class exams because certain questions did not test well, but Ms. Little did not receive the same curve.

61. Throughout the Fall 2015 semester, Dr. Francis admitted that Ms. Little was at a disadvantage because Ms. Little had to take alternative format exams.

62. During the Fall 2015 semester, Ms. Little missed a clinical early in the semester. Although Ms. Little's instructor told her that she did not need to make up the clinical, at the end of the semester, Widener told Ms. Little that she had to make up the missed clinical within a weekend or she would fail.

63. Ms. Little rushed to make up the online clinical, which included eight (8) hours of video and associated assignments and dropped her completed assignment off at Widener as instructed. Ms. Little informed the School of Nursing Secretary that she dropped off the assignment and was informed that the Professor was not there and just needed to know that it was complete.

64. During the Fall 2015 semester, Ms. Little attempted to make up an online quiz in her Patho-Pharmacology class, which she missed because she was in the hospital. Ms. Little had previously been allowed – and other students were allowed – to make up online quizzes. Ms. Little's professor refused to allow Ms. Little to make up the online quiz and she received a zero.

65. Early in the Spring 2016 semester, Ms. Little left the hospital to take a MedCalc exam. Ms. Little previously took these exams in the Disability Services Office; however, this time, Dr. Susan Mills placed her arm on Ms. Little's back and escorted Ms. Little to Dr. Schwartz's office.

66. Dr. Schwartz, who knew Ms. Little's accommodations, screamed at Ms. Little and accused Ms. Little of lying about having accommodations. Dr. Schwartz would not allow Ms. Little to take the MedCalc exam that day.

67. During the Spring 2016 semester, Ms. Little went to the hospital at approximately 2:00 a.m. and was unable to attend a Pediatrics exam.

68. Ms. Little's mother called Ms. Little's professor from the emergency room to inform the professor that Ms. Little would not be able to make it to take the exam. Ms. Little's

9

professor told her that Ms. Little could not make up the exam because she did not give twenty-four (24) hours notice that Ms. Little would miss the exam.

69. Ultimately, Ms. Little was allowed to take an alternative format make-up exam, which, like all other alternative format make-up exams, was more difficult than the original multiple choice exams Ms. Little's classmates took.

70. During the Spring 2016 semester, Ms. Little was also enrolled in a Med Surg clinical at Riddle Hospital with Ms. Kimberly Bird-Webb. Ms. Little and at least one other classmate missed two clinicals while another classmate missed three clinicals. Widener required Ms. Little to make up both clinicals.

71. Upon information and belief, Widener did not require the other classmates to make up all missed clinicals.

72. During the Spring 2016 semester, Ms. Little was enrolled in a knowledge synthesis class. Ms. Little was not permitted to turn in assignments late or do make up assignments.

73. During the Fall 2015 and Fall 2016 semesters, however, Ms. Little had been permitted to miss classes as needed and to turn in assignments late or do make up assignments in her knowledge synthesis classes.

74. During the Spring 2016 semester, various professors questioned Ms. Little on whether she had any documents inside her Total Parenteral Nutrition ("TPN") backpack that could assist Ms. Little during exams.

75. TPN is a method of feeding that bypasses the gastrointestinal tract. Fluids are given into a vein to provide most of the nutrients the body needs.

76. Ms. Little was allowed to take her TPN backpack into the exam, but only after Widener searched the backpack on at least on occasion.

10

77. As a result of Widener's actions, Ms. Little's GPA dropped to approximately a 3.2 GPA.

78. Despite Widener's increasing failure to accommodate Ms. Little's disability, Ms. Little successfully completed her junior year at Widener.

## Widener Fails to Accommodate Ms. Little During Her Senior Year; Forces Ms. Little to Withdraw from the School of Nursing

79. During Ms. Little's senior year, Widener's failure to accommodate Ms. Little increased.

80. During the Fall 2016 semester, Ms. Little's Population Health professor never met with Ms. Little (or with Ms. Bachus) despite Ms. Little's numerous attempts by email and phone to review and sign Widener's required accommodations agreement. This became an issue when the Assistant Dean of Nursing informed Ms. Little that she had no accommodation for the Population Health class because there was no signed accommodations agreement in place.

81. During the Fall 2016 semester, Ms. Little attempted to make up an exam in her Population Health class the day after the class took the exam because Ms. Little was throwing up all night and running a high fever the morning of the exam.

82. Although the Population Health professor told Ms. Little that the alternative test would not be ready for two weeks, Ms. Little was informed that she had one day to take the test because accommodations were never agreed upon. Ms. Little was given a time and place for the makeup exam without first being consulted about Ms. Little her availability.

83. During the Fall 2016 semester, despite numerous attempts by both Ms. Bachus and Ms. Little to schedule a meeting, Ms. Little's Social Justice professor would not meet with Ms. Little until thirteen (13) weeks into the Fall 2016 semester.

11

84. When Ms. Little met with the Social Justice professor regarding a simulation class that Ms. Little missed, Ms. Little was told that missing the class represented ten percent (10%) of Ms. Little's class participation grade because there was no accommodations agreement in place. Ms. Little explained to her professor that she had a medical procedure and offered a physician's note but the professor did not care.

85. During the Fall 2016 semester, the School of Nursing utilized a software application called "ZOOM," which allowed students to remotely participate in class.

86. Most professors apparently know very little about ZOOM and did not make ZOOM available for Ms. Little to utilize when she was sick.

87. One professor who is knowledgeable about ZOOM either forgot or did not have time to set up ZOOM for Ms. Little to use.

88. Ms. Little asked to use ZOOM for a class she could not attend, however, the professor responded the next day that she was running late and could not set up ZOOM in time. The same professor complained that Ms. Little was not in class to hear the lectures/material.

89. During the Fall 2016 semester, no notes were made formally available to Ms. Little despite being told this was an option for her. Ms. Little relied solely on classmates for notes.

90. During the Fall 2016 semester, Ms. Little's general alternative format testing was extremely unfair and more difficult than the testing applied to her fellow students.

91. Ms. Little was supposed to be tested on the same material with only fifteen percent (15%) of the material in an alternative format; however, Ms. Little did not receive the same multiple choice or additional question format that allowed her the same ability to answer the questions provided, she was tested on materials that are different than what was reviewed in class, and she did not receive partial credit on essays.

92. On multiple occasions, professors informed Ms. Little that creating alternative format exams would take about a week because they had to create new questions.

93. Also, other students often received points back if a large number of the students missed a test question(s). Ms. Little did not get these points added to her scores.

94. The alternative format testing and grading put Ms. Little at a disadvantage.

95. Upon information and belief, during the Fall 2016 semester, Widener instructed Ms. Bachus and Ms. Little's professors to cease communication with Ms. Little.

96. Ms. Little requested accommodations that would have enabled her to complete her courses for the Fall 2016 semester, but Widener would not accommodate Ms. Little.

97. Specifically, Ms. Little requested a medical incomplete until the end of the semester because she was experiencing a flare-up. The medical incomplete would have enabled Ms. Little to make up missed assignments and/or tests before the beginning of the Spring 2017 semester.

98. Ms. Little's accommodation requests were not inconsistent with any prior accommodations that she received or that Widener provided to other students.

99. On December 9, 2016, Ms. Little and her parents with Dr. Schwartz and Dean Laura C. Dzurec to discuss Ms. Little's accommodation requests. Dr. Schwartz and Dean Dzurec refused to discuss Ms. Little's reasonable accommodation requests or any alternatives.

**Widener's Failure to Accommodate Ms. Little Forces Ms. Little to Withdraw**

100. As a result, on December 18, 2016, Ms. Little was forced to request a voluntary medical withdrawal for the Fall 2016 semester, which caused her to lose her entire senior year because Ms. Little could not enroll in the Spring 2017 semester without completing the Fall 2016 semester.

101. Since Ms. Little was forced to request a voluntary medical withdrawal for the Fall 2016 semester, Ms. Little lost a CHOP clinical because she could not continue to the Spring 2017 semester.

102. Ms. Little will have to repeat the Fall 2016 semester in order to continue to her final semester.

### Widener Accommodated Other Students

103. During Ms. Little's tenure at Widener, Widener provided accommodations to other students that it denied Ms. Little and held Ms. Little to higher standards. For example:

(a) Prior to Ms. Little's senior year, Widener prohibited Ms. Little from recording classes, but allowed other students to record classes;

(b) A student suffered a concussion and was allowed to miss clinicals and an exam without having to take an alternative format (essay) make-up exam;

(c) Upon information and belief, Widener allowed other students to take make up tests in multiple-choice format as opposed to alternative format (essay) exams;

(d) Widener allowed other students to take make up quizzes and exams that it did not allow Ms. Little to make up. Some of these students missed quizzes and exams for personal/social reasons or to attend school athletic and extracurricular events, including an extracurricular event that Dr. Schwartz oversees;

(e) Widener allowed other students to miss classes without any adverse consequences, including students who missed classes for no legitimate reason, and to sign other students into class who were not even present;

(f) Widener allowed other students to make up missed clinicals; and

(g) Widener allowed another student to miss over a month of the Fall 2016 semester and allowed the student to make up missed exams/tests up to the day before the

14

start the Spring 2017 semester. Widener allowed this student to take online makeup quizzes/exams. This student was allowed to enroll in the Spring 2017 semester and has since graduated from Widener. Ms. Little requested similar accommodations in her December 9, 2016 meeting, but Widener denied Ms. Little's requests.

## COUNT I
## Section 504 Rehabilitation Act

104. Plaintiff incorporates by reference paragraphs 1 through 103 as though the same were set forth at length herein.

105. Ms. Little is disabled within the meaning of the Rehabilitation Act in that she is an individual with an impairment that substantially limits one or more major life activities, as defined by § 504 of the Rehabilitation Act, 28 U.S.C. § 705(20)(B), incorporating by reference 42 U.S.C. § 12102.

106. Moreover, Widener regarded Ms. Little as an individual with a disability under the Rehabilitation Act, 28 U.S.C. § 705(20)(B), incorporating by reference 42 U.S.C. § 12102.

107. Ms. Little was and is qualified to participate in Widener's nursing program.

108. By failing to reasonably accommodate Ms. Little's disability and failing to allow her to complete her courses, Widener excluded Ms. Little from participation in, denied her the benefit of, and subjected her to discrimination in a program or activity receiving federal financial assistance in violation of the Rehabilitation Act.

109. As a direct and proximate result of Widener's actions and inactions directed at Ms. Little, she has suffered and continues to suffer damages, including but not limited to: loss of tuition and related expenses, loss of the opportunity to advance her studies, loss of income and benefits, emotional distress, anxiety, humiliation, and inconvenience.

## COUNT II
### Americans with Disabilities Act

110. Plaintiff incorporates by reference paragraphs 1 through 109 as though the same were set forth at length herein.

111. Widener denied Ms. Little the full and equal enjoyment of the services of its place of public accommodation because of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182(a).

112. Widener's requirement that Ms. Little make up missed exams in a more difficult alternative format and to make up missed exams within a limited time period imposed on her criteria that screened out or tended to screen out Ms. Little, an individual with a disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182(b)(2)(A)(i).

113. Widener failed to accommodate Ms. Little by failing to allow Ms. Little to make up all missed exams, quizzes, assignments, lab hours, to attend classes using ZOOM, to take a medical incomplete for the Fall 2016 semester, and to ensure all professors timely and adequately completed Ms. Little's disability accommodation forms, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.309(c).

114. As a direct and proximate result of Widener's actions and inactions directed at Ms. Little, she has suffered and continues to suffer damages, including but not limited to: loss of tuition and related expenses, loss of the opportunity to advance her studies, loss of income and benefits, emotional distress, anxiety, humiliation, and inconvenience.

**WHEREFORE**, Plaintiff demands judgment against Widener for violation of the Rehabilitation Act and the Americans with Disabilities Act as follows:

(a)  That Widener be ordered to reinstate Ms. Little into its Nursing Program;

(b)  That Widener be required to compensate Ms. Little for the full value of tuition and related expenses she incurred because of Widener's illegal treatment of Ms. Little;

(c)  That Ms. Little be awarded compensatory damages in an amount to be determined at trial;

(d)  That Ms. Little be awarded punitive damages in an amount sufficient to punish Widener and deter others from similar conduct;

(e)  That Widener be enjoined from discriminating or retaliating against Ms. Little in any manner prohibited by the Rehabilitation Act and the Americans with Disabilities Act;

(f)  That Ms. Little be awarded against Widener the costs and expenses of this litigation, including reasonable attorney's fees; and

(g)  That Ms. Little be granted such further legal and equitable relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury to try all claims triable by jury.

Dated: August 21, 2017

*/s/ Stephanie J. Mensing*
Stephanie J. Mensing
PA ID No. 89625
Mensing Law LLC
The Philadelphia Building
1315 Walnut Street – Suite 917
Philadelphia, PA 19107
(215) 586-3751; (215) 359-2741 fax
Attorney for Plaintiff